1    **PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

2    Name  Ngo          Sieu          P.
        _____
        (Last)          (First)        (Initial)

3    Prisoner Number ___J-07024___

4    Institutional Address  P.O. Box 689, B-319U, Soledad, CA 93960-0689

5

6

7                    **UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**

8    SIEU PHONG NGO              CV 08        0620

     (Enter the full name of plaintiff in this action.)                )
9                                                                       )
                        vs.                                             )
10   BEN CUYY, Warden, CTF, and                                         )    Case No. _____
                                                                        )    (To be provided by the clerk of court)
11   DENNIS KENNEALLY, Executive                                        )
                                                                        )    **PETITION FOR A WRIT**
12   Director of the Board of Parole                                    )    **OF HABEAS CORPUS**
                                                                        )
13   Hearings, et seq.                                                  )
                                                                        )
14   (Enter the full name of respondent(s) or jailor in this action)    )
                                                                        )
15

16                    Read Comments Carefully Before Filling In

17   When and Where to File

18        You should file in the Northern District if you were convicted and sentenced in one of these

19   counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa,

20   San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma. You should also file in

21   this district if you are challenging the manner in which your sentence is being executed, such as loss of

22   good time credits, and you are confined in one of these counties. Habeas L.R. 2254-3(a).

23        If you are challenging your conviction or sentence and you were not convicted and sentenced in

24   one of the above-named fifteen counties, your petition will likely be transferred to the United States

25   District Court for the district in which the state court that convicted and sentenced you is located. If

26   you are challenging the execution of your sentence and you are not in prison in one of these counties,

27   your petition will likely be transferred to the district court for the district that includes the institution

28   where you are confined. Habeas L.R. 2254-3(b).

                                                              "ORIGINAL"

     PET. FOR WRIT OF HAB. CORPUS        - 1 -

1  Who to Name as Respondent

2      You must name the person in whose actual custody you are. This usually means the Warden or

3  jailor. Do not name the State of California, a city, a county or the superior court of the county in which

4  you are imprisoned or by whom you were convicted and sentenced. These are not proper

5  respondents.

6      If you are not presently in custody pursuant to the state judgment against which you seek relief

7  but may be subject to such custody in the future (e.g., detainers), you must name the person in whose

8  custody you are now and the Attorney General of the state in which the judgment you seek to attack

9  was entered.

10  A. INFORMATION ABOUT YOUR CONVICTION AND SENTENCE

11      1. What sentence are you challenging in this petition?

12          (a)    Name and location of court that imposed sentence (for example; Alameda

13              County Superior Court, Oakland):

14          **County of Orange, Superior Court**    **Santa Ana, CA**

15              Court                          Location

16          (b)   Case number, if known    C199109

17          (c)   Date and terms of sentence   10/21/1993; 15 yrs to life plus 1 yr.

18          (d)   Are you now in custody serving this term? (Custody means being in jail, on

19              parole or probation, etc.)          Yes  XX       No _____

20              Where?

21              Name of Institution:   **Correctional Training Facility**
                            **Correctional Training Facility (Central)**
22              Address: **P.O. Box 689, B-319U, Soledad, CA 93960-0689**

23      2. For what crime were you given this sentence? (If your petition challenges a sentence for

24  more than one crime, list each crime separately using Penal Code numbers if known. If you are

25  challenging more than one sentence, you should file a different petition for each sentence.)

26  **Murder Second (PC § 187); with use of Firearm (Pen. Code**

27  **§ 12022(A)(1).)**

28

PET. FOR WRIT OF HAB. CORPUS     - 2 -

3. Did you have any of the following?

Arraignment:                                     Yes __XX__        No ____

Preliminary Hearing:                             Yes __XX__        No ____

Motion to Suppress:                              Yes ____          No __XX__

4. How did you plead?

Guilty __XX__      Not Guilty ____      Nolo Contendere ____

Any other plea (specify) __Plea Bargain_____

5. If you went to trial, what kind of trial did you have?

Jury __XX__      Judge alone____      Judge alone on a transcript ____

6. Did you testify at your trial?                Yes ____          No __XX__

7. Did you have an attorney at the following proceedings:

(a)    Arraignment                              Yes __XX__        No ____

(b)    Preliminary hearing                      Yes __XX__        No ____

(c)    Time of plea                             Yes __XX__        No ____

(d)    Trial                                    Yes __XX__        No ____

(e)    Sentencing                               Yes __XX__        No ____

(f)    Appeal                                   Yes ____          No __XX__    N/A

(g)    Other post-conviction proceeding         Yes ____          No __XX__

8. Did you appeal your conviction?              Yes ____          No __XX__

(a)    If you did, to what court(s) did you appeal?

Court of Appeal                          Yes ____          No __XX__

Year: _____    Result: __N/A_____

Supreme Court of California              Yes ____          No __XX__

Year: _____    Result: __N/A_____

Any other court                          Yes ____          No __XX__

Year: _____    Result: __N/A_____

(b)    If you appealed, were the grounds the same as those that you are raising in this

1      petition?                                      Yes _____    No **XX**

2          (c)    Was there an opinion?               Yes _____    No **XX**

3          (d)    Did you seek permission to file a late appeal under Rule 31(a)?

4                                                     Yes _____    No **XX**

5                 If you did, give the name of the court and the result:

6                        **N/A**

7      _____

8   9. Other than appeals, have you previously filed any petitions, applications or motions with respect to

9   this conviction in any court, state or federal?          Yes **xx**    No_____

10        [Note: If you previously filed a petition for a writ of habeas corpus in federal court that

11  challenged the same conviction you are challenging now and if that petition was denied or dismissed

12  with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit

13  for an order authorizing the district court to consider this petition. You may not file a second or

14  subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit. 28

15  U.S.C. §§ 2244(b).]

16      (a)    If you sought relief in any proceeding other than an appeal, answer the following

17             questions for each proceeding. Attach extra paper if you need more space.

18         I.    Name of Court: **Orange County Superior Court**

19               Type of Proceeding: **Habeas Corpus (M-10984)**

20               Grounds raised (Be brief but specific):

21                   **The Board of Parole hearings' decision was not**

22                   **supported by any evidence and resulted in a**

23                   **deprivation of petitioner's 5th, 6th, 8th, and**

24                   **14th Amendment Rights.**

25               Result: **Relief Denied (Ex. J.)**  Date of Result: **8/31/2006**

26         II.   Name of Court: **Court of Appeal, 4th App. District**

27               Type of Proceeding: **Habeas Corpus (G037732)**

28               Grounds raised (Be brief but specific):

PET. FOR WRIT OF HAB. CORPUS          - 4 -

(same as listed in section I, supra.)

a._____

b._____

c._____

d._____

Result: Relief Denied (Ex. K.) Date of Result: 11/4/2006

III.    Name of Court: California Supreme Court

Type of Proceeding: Habeas Corpus (S148684)

Grounds raised (Be brief but specific):

a. (same)_____

b._____

c._____

d._____

Result: Relief Denied (Ex. L.) Date of Result: 5/23/2007

IV.    Name of Court: N/A_____

Type of Proceeding: _____

Grounds raised (Be brief but specific):

a._____N/A_____

b._____

c._____

d._____

Result: _____N/A_____ Date of Result:_____

(b)    Is any petition, appeal or other post-conviction proceeding now pending in any court?

Yes _____    No XX

Name and location of court: ____N/A_____

B. GROUNDS FOR RELIEF

State briefly every reason that you believe you are being confined unlawfully. Give facts to support each claim. For example, what legal right or privilege were you denied? What happened? Who made the error? Avoid legal arguments with numerous case citations. Attach extra paper if you

PET. FOR WRIT OF HAB. CORPUS        - 5 -

1  need more space. Answer the same questions for each claim.

2      [Note: You must present ALL your claims in your first federal habeas petition. Subsequent

3  petitions may be dismissed without review on the merits. 28 U.S.C. §§ 2244(b); McCleskey v. Zant,

4  499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]

5      Claim One: See page 5 of Brief in Support of petition,

6  attached hereto.

7      Supporting Facts: Contrary to Supreme Court precedent the State Court
   erroneously ruled that the BPH was not required to consider the governing
8  regulations at petitioner's recent parole consideration hearing, when
   determining his suitability.  Moreover, the Court upheld the BPH's finding
9  that petitioner lacks insight into the commitment offense, despite
   medical and other evidence to the contrary.  (See pages 6-12 of Brief
10 attached hereto.)

11      Claim Two: THE BPH"S RELIANCE SOLELY ON THE FACTS AND RE-CHARACTERIZA-
   TION OF PETITIONER'S COMMITMENT OFFENSE TO DENY PAROLE RESULTED IN A
12 VIOLATION OF DUE PROCESS UNDER THE 5TH AND 14TH AMENDMENTS. (See p. 2 of
   Brief.)
13      Supporting Facts: The BPH arbitrarily and capriciously denied petitioner
   parole, based upon the commitment offense alone, asserting that petitioner's
14 conduct was beyond the minimum necessary to sustain a conviction for
   second degree murder, even though the record is not supportive of its
15 conclusion.  Further, the BPH's failure to consider all relevant factors
   deprived petitioner's application of receiving "due consideration."  (See
16 pages 13-20 of Brief attached hereto.)

17      Claim Three:
                         N/A
18

19      Supporting Facts:

20

21

22

23      If any of these grounds was not previously presented to any other court, state briefly which

24 grounds were not presented and why:
                         N/A
25

26

27

28

PET. FOR WRIT OF HAB. CORPUS      - 6 -

1    List, by name and citation only, any cases that you think are close factually to yours so that they

2    are an example of the error you believe occurred in your case. Do not discuss the holding or reasoning

3    of these cases:
     See pages 3-21 of Brief in support of petition, attached hereto.)

4

5

6

7    Do you have an attorney for this petition?                    Yes____    No __xx__

8    If you do, give the name and address of your attorney:
                                          N/A

9

10   WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in

11   this proceeding. I verify under penalty of perjury that the foregoing is true and correct.

12

13   Executed on __1-22-2008__

14          Date                              Signature of Petitioner

15

16

17

18

19

20   (Rev. 6/02)

21

22

23

24

25

26

27

28

PET. FOR WRIT OF HAB. CORPUS        - 7 -

## IN THE UNITED STATES DISTRICT COURT

### FOR THE NORTHERN DISTRICT

SIEU PHONG NGO,                              )   Case No.
                                             )
    Petitioner-Appellant,                    )    (Cal. Suprme Ct.
                                             )     No. S148684)
    v.                                       )
                                             )   Super. Ct. No. M10984
BEN CURRY, Warden, CTF, and                  )
DENNIS KENNEALLY, Executive Director         )
of the Board of Parole Hearings (BPH),       )
                                             )
    Respondent-Appellee.                     )
                                             )
_____)

---

### BRIEF IN SUPPORT OF
### PETITION FOR WRIT OF HABEAS CORPUS

---

Sieu P. Ngo
Correctional Training Facility
Central-Facility
J-07024
P.O. Box 689, B-319U
Soledad, CA 93960-0689

## TABLE OF CONTENTS

STATEMENT OF JURISDICTION ..................................... 1

QUESTIONS PRESENTED FOR REVIEW ................................ 1

STATEMENT OF THE CASE ........................................ 2

SUMMARY OF ARGUMENT .......................................... 3

MEMORANDUM OF POINTS & AUTHORITIES

     I)   THE SUPERIOR COURT'S RULING INVOLVED AN
        UNREASONABLE APPLICATION OF "CLEARLY
        ESTABLISHED" LAW WHEN IT CONCLUDED THAT
        THE BPH WAS NOT REQUIRED TO CONSIDER
        FACTORS SET FORTH IN THE CALIFORNIA CODE
        OF REGULATIONS, TITLE 15, SECTION 2402 AND
        UPHELD THE BOARD'S FINDING THAT PETITIONER
        DEMONSTRATED A LACK OF INSIGHT CONTRARY TO
        THE REPORTS PREPARED BY CLINICAL PSYCHOLOGIST .... 5

        A.   The State Court's Unreasonable Application of
            "Clearly Established" Law ..................... 6

        B.   The State Court's Unreasonable Conclusion .... 8

    II)   DID THE BPH'S RELIANCE SOLELY ON THE FACTS AND
        RE-CHARACTERIZATION OF PETITIONER'S COMMITMENT
        OFFENSE TO DENY PAROLE RESULT IN A VIOLATION
        OF DUE PROCESS OF UNDER THE 5TH AND 14TH
        AMENDMENTS ...................................... 13

        A.   The Nature of Petitioner's Offense Does Not
            Supply "Some Evidence" Rationally Demonstrating
            His Release Would Unreasonably Endanger
            Public Safety ............................... 13

            1)   The BPH's Dispassionate and Calculated
               Finding Lacks Evidentiary Support in
               the Record ............................. 15

            2)   The BPH's Exceptionally Callous Finding
               to Deny Parole In This Case Was
               Erroneously Applied ..................... 17

        B.   The Arbitrariness of the BPH's
            Determination ............................... 19

CONCLUSION ................................................... 21

## TABLE OF AUTHORITIES

### FEDERAL CASES

Biggs v. Turhune (9th Cir. 2003) 334 F.3d 910 .............. 6

Bishop v. Woods 426 U.S. 341 ............................... 8

Board of Pardons v. Allen (1987) 482 U.S. 369
    [107 S.Ct. 2415, 96 L.Ed.2d 303] ........ 3, 5, 6, 13, 19

Early v. Packer (2002) 537 U.S. 3 ......................... 5

Greenholtz v. Inmates of Nebraska Penal (1979) 442 U.S. 1
    [99 S.Ct. 2100, 60 L.Ed.2d 668] ................. 3, 5, 6

Irons v. Carey, (9th Cir. 2007) 479 F.3d 658 ........... 6, 19

Irons v. Warden (2005) 358 F.Supp.2d 936 ............... 7, 9

Lambert v. Blodgett (9th Cir. 2004) 393 F.3d 943 ...........5

Martin v. Marshall (2007) 431 F.Supp.2d 1038 ............7, 14

McQuillion v. Duncan (9th Cir. 2002) 306 F.3d 895 .... 3, 5, 6

Oxborrow v. Eikenberry (9th Cir. 1989) 877 F.2d 1395 ....... 8

Peltier v. Wright (9th Cir. 1994) 15 F.3d 860 ............. 8

Rosenkrantz v. Marshall (2006)
    444 F.Supp.2d 1063........................... 15, 17, 21

Sass v. California Bd. of Prison Terms (9th Cir. 2006)
    461 F.3d 1123 .................................. 12, 15

Superintendent v. Hill (1985) 472 U.S. 445
    [105 S.Ct. 2768, 86 L.Ed.2d 356] .............. 6, 12, 15

Thompson v. Oklahoma (1988)
    487 U.S. 815 ...................................... 20

Rice v. Collins (2006) 126 S.Ct. 969, 975 ................ 5

Williams v. Taylor (2000) 529 U.S. 362 ................... 5

### STATE CASES

In re Dannenberg (2005) 34 Cal.4th 1061 ............. passim

In re Elkins (2006) 144 Cal.App.4th 475 ................. 19

In re Lee (2006) 143 Cal.App.4th 1400 ................... 19

In re Minnis (1972) 7 Cal.3d 639 ........................ 4, 7

In re Ramirez (2001) 94 Cal.App.4th 571 .................... 9

In re Rosenkrantz (2002) 29 Cal.4th 616 .............. passim

In re Smith (2003) 109 Cal.App.4th 489 .................... 18

In re Scott (2004) 119 Cal.App.4th 888 ............ 17, 18, 20

In re Scott II (2005) 133 Cal.App.4th 573 ............. 19, 20

In re Tripp 150 Cal.App.4th 306 ........................ 17, 19

In re Van Houten (2004) 116 Cal.App.4th 339................ 18

In re Weider (2006) 145 Cal.App.4th 570 ................... 19

People v. Croy (1985) 14 Cal.3d 1 ......................... 16

People v. Durham (1969) 70 Cal.2d 171 ..................... 16

People v. Kaufman (1907) 152 Cal. 331 ..................... 16

People v. Mendoza (1998) 18 Cal.4th 1114 .................. 16

People v. Nguyen (1993) 21 Cal.App.4th 518 ................ 16

People v. Prettyman (1996) 14 Cal.4th 248 ................. 16

People v. Price (1991) 1 Cal.4th 324 ...................... 16

People v. Woods (1992) 8 Cal.App.4th 1570 ................. 16

## FEDERAL STATUTES

U.S. Const., Amend. V ................................. 1, 12

U.S. Const., Amend. VI ................................ 1, 12

28 U.S.C. § 2254(d)(2) ..................................... 1

## STATE STATUTES

Penal Code § 3041.5 subdivision (b)(2)(A)-(B) .............. 9

Cal. Code of Regulations., tit. 15, § 2401(b) ............. 11

Cal. Code of Regulations., tit. 15, § 2402 ............. 5, 7

Cal. Code of Regulations., tit. 15, § 2402(d)(4) .......... 20

Cal. Code of Regulations., tit. 15, § 2402(d)(9) .......... 20

## IN THE UNITED STATES DISTRICT COURT

### FOR THE NORTHERN DISTRICT

SIEU PHONG NGO,                                 )        Case No.
                                                )
       Petitioner-Appellant,                    )
                                                )
       v.                                       )
                                                )
BEN CURRY, Warden, CTF, and                     )        **BRIEF IN SUPPORT**
DENNIS KENNEALLY, Executive Director            )        **PETITION FOR WRIT**
of the Board of Parole Hearings (BPH),          )        **OF HABEAS CORPUS**
                                                )
       Respondent-Appellee.                     )
                                                )
_____ )

### STATEMENT OF JURISDICTION

The district court has jurisdiction to decide the petition for writ of habeas corpus filed by petitioner under 28 U.S.C. § 2254. By order filed May 23, 2007, the California Supreme Court denied review. See Exhibit L. That judgment is a final order that disposes of all petitioner's claims.

### QUESTIONS PRESENTED FOR REVIEW

1. Did the Superior Court's ruling involve an unreasonable application of "clearly established" law when it concluded that the BPH was not required to consider factors set forth in the California Code of Regulations (CCR), title 15, section 2402 and upheld the Board's finding that Petitioner demonstrated a lack of insight contrary to the reports prepared by clinical psychologist?

2. Did the BPH's reliance solely on the facts and re-characterization of Petitioner's commitment offense to deny parole result in a violation of due process under the 5th and 14th Amendments?

-1-

### STATEMENT OF THE CASE

Petitioner Sieu Ngo is in the custody of the Department of Corrections and Rehabilitation at the Correctional Training Facility in Soledad, California serving a term of 16 years to life following his conviction in 1994 in Orange County Superior Court Case No. C199109 wherein petitioner was convicted of second degree murder in violation of Penal Code section 187 and it was found that petitioner was vicariously armed with a firearm within the meaning of Penal code section 12022.

Petitioner's minimum eligible release date was set for May 24, 2003. On May 13, 2002, petitioner appeared before the BPH for his initial parole eligibility hearing. He was denied parole for two years. At an August 3, 2004, subsequent hearing, he was denied parole for one year. Finally, at a February 8, 2006, hearing, petitioner was denied parole for two years. (Exhibit A.)

Petitioner then filed a writ of habeas corpus in the Superior Court of Orange County. On August 31, 2006, the Superior Court denied the writ finding that the BPH's denial was authorized by Penal Code section 3041, subdivision (b). (Exhibit J.) Citing In re Dannenberg, 34 Cal.4th 1061, 1071 (2005), the court concluded that the BPH was not required to consider the factors set forth in California Code of Regulations, title 15, section 2402. The court reasoned that in petitioner's case the BPH pointed to the gang-related nature of the offense as a factor beyond the minimum elements of second degree murder. Next, petitioner pursued the claim in a habeas

-2-

1 petition filed in the Court of Appeal, Fourth Appellate
2 District, which was denied on November 9, 2006. (Exhibit K.)
3 The California Supreme Court denied relief on May 23, 2007.
4 (Exhibit L.)

5                    **SUMMARY OF ARGUMENT**

6       In Greenholtz v. Inmates of Nebraska Penal, 442 U.S. 1, 7
7 (1979) and Board of Pardons v. Allen, 482 U.S. 369 (1987), the
8 United States Supreme Court established in 1979 and reaffirmed
9 in 1987 that "a state's statutory scheme, if it uses mandatory
10 language, creates a presumption that parole release will be
11 granted when or unless certain designated findings are made, and
12 thereby gives rise to a constitutional liberty interest." (Id.
13 at 12; Allen, 482 U.S. at 377. The Supreme Court further added
14 that parole board "regulations are relevant to determination
15 of whether parole scheme gives rise to constitutionally
16 protected liberty interest." (Allen, supra, 482 U.S. at p. 369;
17 see also McQuillion v. Duncan, 306 F.3d 895, 902 (9th Cir. 2002)
18 ⌜holding that in addition to the determinations set forth in
19 Penal Code § 3041(b), the California Code of Regulations creates
20 "an expectation of parole protected by the Due Process
21 Clause"].)

22       Moreover, the California Supreme Court has indicated
23 that the Board must set a parole release date for a prisoner
24 "unless ⌜it] finds, in the exercise of its discretion, that
25 ⌜the prisoner is] unsuitable for parole in light of the
26 circumstances specified by statute and regulation."
27 (Rosenkrantz, 29 Cal.4th 616, 654 (2002).) And in so doing, "the
28
                          -3-

1 Board must apply detailed standards when evaluating whether an

2 inmate is suitable for parole on pubic safety grounds."

3 (Dannenberg, supra, 34 Cal.4th at pp. 1079-80, 1095, fn. 16.)

4     Here, the Superior Court's conclusion is contrary to the

5 weight of authority indicating that the BPH is required to

6 consider the applicable statutes and regulations governing

7 parole decisions.  Further, the Court's decision fails to

8 address petitioner's claim that denial of parole based solely

9 on the unchanging factor of the commitment offense violated the

10 constitutional prohibition against cruel and unusual punishment,

11 or that the denial lacks evidentiary support in the record.

12 Similarly, its factual finding that the BPH's denial was

13 authorized because the BPH concluded that petitioner "was

14 minimizing the gravity of the crime and his involvement and

15 demonstrating a lack of insight, is without any medical support.

16 (Ex. J at p. 3.)

17     Accordingly, because the Superior Court did not review

18 petitioner's claims in light of the "factors specified by

19 statute and regulations" (Rosenkrantz, supra, 29 Cal.4th at

20 p. 658) and ignored the constitutional claims altogether,

21 Petitioner did not receive "due consideration" by means

22 "consonant with due process." (In re Minnis, 7 Cal.3d 639,

23 649.)  Thus, this Court should find that the State court

24 employed an unreasonable application of "clearly established"

25 law and denied petitioner due process under the Fifth and

26 Fourteenth Amendments of the United States Constitution.

27

28                              -4-

## MEMORANDUM OF POINTS & AUTHORITIES

### I

### THE SUPERIOR COURT'S RULING INVOLVED AN UNREASONABLE APPLICATION OF "CLEARLY ESTABLISHED" LAW WHEN IT CONCLUDED THAT THE BPH WAS NOT REQUIRED TO CONSIDER FACTORS SET FORTH IN THE CALIFORNIA CODE OF REGULATIONS, TITLE 15, SECTION 2402 AND UPHELD THE BOARD'S FINDING THAT PETITIONER DEMONSTRATED A LACK OF INSIGHT CONTRARY TO THE REPORTS PREPARED BY CLINICAL PSYCHOLOGISTS

A state court decision is "contrary to" clearly established United States Supreme Court precedent "if it applies a rule that contradicts the governing law set forth in ⌈Supreme Court] cases, 'or if it confronts a set of facts that are materially indistinguishable from a "decision'" of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. (Early v. Packer, 537 U.S. 3, 8 (2002) (quoting Williams v. Taylor, 529 U.S. 362, 405-06.) Additionally, if the state court identifies the correct governing legal principle to the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case, the state court's decision has been held to be an unreasonable application of clearly established federal law. (Williams, supra, 529 U.S. at 413; Lambert v. Blodgett, 393 F.3d 943, 978 (9th Cir. 2004); Rice v. Collins, 126 S.Ct. 969, 975 (2006).)

In Greenholtz and Allen the Supreme Court established that, when statute or regulatory provisions are phrased in mandatory terms, the BPH has a duty to "use judgment in applying the standards ... set by ⌈the] statutory or regulatory scheme." (Allen,, supra, 482 U.S. at pp. 375-378; Greenholtz, supra 442 U.S. at p. 12; McQuillion, supra, 306 F.3d at pp. 901-903;

1  | Biggs v. Terhune, 334 F.3d 910, 914-15, (9th Cir. 2003).) Thus,
2  | while "[t]he [BPH's] discretion in parole matters has been
3  | described as 'great' [citation] and 'almost unlimited'
4  | [citation]" (Rosenkrantz, supra, 29 Cal.4th at p. 655), the
5  | "explicit guidelines" of the regulations places some
6  | limitations upon the broad discretionary authority of the BPH.
7  | (Allen, supra, 482 U.S. at p. 378 fn(s) 9 & 10; 15 CCR §§ 2400,
8  | 2401, 2402 et seq.)

9  |     Moreover, the Supreme Court has clearly established that a
10 | parole board's decision deprives a prisoner of due process with
11 | respect to his constitutionally protected liberty interest in a
12 | parole release date if the board's decision is not supported by
13 | "some evidence in the record," or is "otherwise arbitrary."
14 | (Superintendent v. Hill, 472 U.S. 445, 457 (1985); Irons
15 | v. Carey, 479 F.3d 658, 662 (9th Cir. 2007).)  Additionally,
16 | the evidence underlying the [BPH's] decision must have some
17 | indicia of reliability."  (McQuillion, supra, 306 F.3d at p.
18 | 904.)

19 | **A.   The State Court's Unreasonable Application of**
20 | **"Clearly Established" Law**

21 |     In the present case, the Superior Court correctly
22 | identifies the legal principle -- requiring the BPH to "set a
23 | release date unless it determines that 'certain designated
24 | findings are made'" (442 U.S. at 12; 482 U.S. at 377078) -- but
25 | unreasonably applied the principle to the facts of petitioner's
26 | case when it ruled that "the BPH was not required to consider
27 | the factors set forth in [BPH] regulations."  (Ex. J at p. 3.)
28 |

1   Both state and federal courts have recognized that BPH

2   regulations defining the manner in which suitability

3   determinations are to be made are set forth in section 2402 of

4   the California Code of Regulations.  (See _Irons_, supra, 358

5   F.Supp.2d at p. 942 ⌐noting the non-exclusive list of factors

6   to be consider when determining an inmate's suitability or

7   unsuitability for parole⌐; _Martin v. Marshall_, 431 F.Supp.2d

8   1038 ⌐same⌐; _Rosenkrantz_, supra, 29 Cal.4th at pp. 653-54

9   ⌐same⌐; _Dannenberg_, supra, 34 Cal.4th at pp. 1078-1080 ⌐same⌐.)

10  Under California law, the Supreme Court has repeatedly

11  emphasized that the BPH is "obligated to consider all relevant

12  factors" (_Minnis_, supra, 7 Cal.3d at p. 645 (1972) and that

13  "⌐i⌐f the decision's consideration of the specified factors is

14  not supported by some evidence in the record and thus is devoid

15  of a factual basis, the court should grant the prisoner's

16  petition for writ of habeas corpus and should order the ⌐BPH⌐

17  to vacate its decision denying parole." (_Rosenkrantz_, supra,

18  29 Cal.4th at p. 658.)

19  Therefore, in assessing whether or not there was "some

20  evidence" to support the BPH's denial of parole, the Superior

21  Court was required to consider the regulations which guide the

22  BPH in making its parole suitability determinations, it had no

23  authority to usurp the regulatory provisions of section 2402,

24  and then deprive Petitioner of his constitutional right "to have

25  his application for ⌐those⌐ benefits 'duly consider' based

26  upon an individualized consideration of all relevant

27  factors."  (_Rosenkrantz_, supra 29 Cal.4th at p. 655.)

28
-7-

1    Petitioner acknowledges the federal court's long standing
2    practice of paying great deference to the views of those courts
3    who are familiar with the intricacies and trends of local law.
4    (Bishop v. Wood, 426 U.S. 341, 346 fn. 10.)  Particularly, to
5    the state court's interpretations of state statute.  However,
6    the Ninth Circuit has made it clear that state courts may not
7    interpret their law in such an arbitrary manner that its
8    interpretation is nothing but an evasion of federal due process
9    requirements.  (See Peltier v. Wright, 15 F.3d 860, 862
10   (9th Cir. 1994) (holding that "we are bound by the state's
11   construction ⌐of state laws] except when it appears that its
12   interpretation is an obvious subterfuge to evade the
13   consideration of a federal issue"); see also Oxborrow v.
14   Eikenberry, 877 F.2d 1395, 1399 (9th Cir. 1989).)

15   The question ultimately to be decided here is whether the
16   Superior Court's interpretation is so unreviewable, i.e. the
17   facts underlying any pro forma decision can stand as "due
18   process" in denying parole suitability, that the federal
19   standard of "a liberty interest protected by the Due Process
20   Clause" is, in essence, completely eviscerated.

21   B.   **The State Court's Unreasonable Conclusion**

22   The Superior Court concluded that the BPH denied parole on
23   the basis that it determined public safety consideration
24   required more incarceration because petitioner's statement that
25   "he thought he was going to a fight ... was minimizing the
26   gravity of the crime and his involvement and demonstrated a lack
27   of insight."  (Ex. J at p. 3.)  To the contrary, on this record
28

-8-

the BPH explicitly utilized the foregoing statement not as a basis for denying parole, but rather, to support its separate decision to put off the next hearing for two years.[1]/ (Ex. A at p. 63, lns 15-18 and p. 64, lns 10-17.)

Even if, assuming arguendo that the BPH denied parole for "lack of insight," case law provides that a BPH's denial based on an inmate's "need for therapy is an even more troubling aspect of its decision." (In re Ramirez, 94 Cal.Ap..4th 549, 571 (2001), disapproved on other grounds in Dannenberg, supra, 34 Cal.4th at p. 1100.) Particularly, when, as here, "[t]he clinical psychologist who prepared the psychological report for the hearing ... specifically advised the [BPH] that there was no psychiatric ground for denying parole." (Ibid.; Ex(s) E & I.) Thus, after ruling that the BPH's "conclusion appears to be simply one repeated often to add another factor to the non-suitability conclusion," the district court in Irons issued and opinion admonishing that "a conclusion by lay [BPH] commissioners that petitioner has not yet achieved required therapy for insight or other reasons is not reasonably sustainable, and a state court's conclusion to the contrary is patently unreasonable." (Irons, supra, 358 F.Supp.2d at p. 948 948.)

---

1.   The board is required to hear each case annually, except the board may schedule the next hearing no later than "two years after any hearing at which parole is denied if the board finds that it is not reasonable to expect that parole would be granted at a hearing during the following year and states the basis for the finding." (See Ex. A at p. 63, lns 16-18; Penal Code § 3041.5(b)(2)(A)-(B).)

1    In the instant case, the information before the BPH
2    overwhelmingly established that the BPH's conclusion lacks even
3    "some evidence."  As is evident in the Mental Health Evaluation
4    reports prepared by Dr. C. Saindon, Ph.D on January 23, 2002,
5    noting that petitioner has "a good deal of insight into the
6    negative aspects of gang involvement, which he regrets to this
7    day" and he "showed significant insight into his commitment
8    offense" (Ex. E at p. 4) and Dr. C. Schroeder, Ph.D. concluding
9    that the "remorse" petitioner expresses is sincere and that in
10   "hindsight, he sees that he perhaps could have stopped the
11   incident and now has great empathy and remorse for the family
12   of the victim."  (Ex. I at p. 2.)

13   Indeed, neither psychologist subscribe to the BPH's need
14   for therapy, but instead, noted to the contrary that
15   petitioner "does not have a mental health disorder which would
16   necessitate treatment either during his incarceration period or
17   following parole" (Ex. E at p. 6) and that "psycholotherapy is
18   not part of his program."$\underline{2}/$  (Ex. I at p. 3.)

19   Accordingly, the BPH's findings was an affront not only to
20   petitioner "who was open in his conversation" with the
21   psychologist (Ex. E at p. 4), but also to the California Depart-
22   ment of Corrections and Rehabilitation, which provided the ther-
23   apeutic programs.  Thus, the state's finding must be rejected.

24
25    2.  The psychologist observed in his reports that
     petitioner has had one incident of depression resulting in an
     attempted suicide at age 16. (Exhibit(s) E at p. 3; I at p. 2.)
26   Of particular importance, Dr. Saindon found "no evidence of mood
     or thought disorder."  And further noted that petitioner's
27   judgment appeared to be sound." (Id. at 4.)

28

1     Further, there was no evidence to support the BPH's
2  determination that petitioner has minimized his role in this
3  crime or the Superior Court's denial of relief based on this
4  finding.  The BPH's decision stated: "It was gang activity and
5  you told this panel that 'I thought I was going to a fist
6  fight', that minimizes the gravity of the crime ⌐and] your
7  involvement in it⌐.]"  (Ex. A at p. 64.)  Although evidence in
8  the record indicates that petitioner engaged in the conduct
9  described in the foregoing quotation, the "circumstances that
10 petitioner committed the act does not support the ⌐BPH's]
11 determination that ⌐petitioner minimized the gravity of the
12 crime] when he described the altercation, or that petitioner
13 ⌐minimized his role in it when he stated that "no one intended
14 to kill the victim]."  (Id. at p. 65; <u>Rosenkrantz</u>, supra,
15 29 Cal.4th at 680.)  This aspect of the BPH's decision omits
16 any consideration of the evidence supportive of petitioner's
17 claim.  (15 CCR § 2401(b).)
18     For example, the BPH does not dispute the evidence
19 establishing that while the fist fight was going on co-defendant
20 "⌐Usumang Muhamed] reached around ⌐petitioner] and shot the
21 ⌐victim], killing him and narrowly missing ⌐petitioner]."
22 (Ex(s) A at p. 5; D at p. 2; H at p. 1.)  Nor does the BPH
23 dispute evidence showing that petitioner "was not the shooter,"
24 and that there was no evidence showing "⌐petitioner] suggested,
25 encouraged or aided or abetted the shooting in any
26 way⌐, or a]fter the shooting ⌐petitioner] angrily confronted the
27 shooter demanding to know why he brought out the gun and
28

1   asserting that he, ⌈petitioner⌉, didn't know the gun was going

2   to be used."  (Ex(s). A at p. 35; D at p. 2.)

3       Although the BPH possesses the discretion to characterize

4   petitioner's response to this event as "hard to believe"

5   (Id. at p. 65), nothing in the record upon which the BPH relies

6   supports the determination that petitioner tends to minimize

7   his role in the crime or he hasn't developed insight into the

8   causative factors of the crime by describing it as an

9   unintentional act.

10      A more complete quotation of petitioner's statement at the

11  parole hearing at which he had indicated that he believed he

12  was "going to a fist fight" establishes that petitioner took

13  responsibility for his actions.  In his closing statement

14  petitioner stated in part:

15          "In hindsight I wish I could have changed what
            happened on that tragic day, but the truth is
16          I really did not know what was about to happen
            that very instant that took Angel's life.  At
17          the time I honestly believed I as getting into
            a fist fight and nothing more.  I did not take
18          Angel's life, it was never my intention that
            such a tragic incident would occur.  Again I was
19          there for a fist fight, nothing I say or do at
            this point will ever change what happened on that
20          tragic day.  All I can do is accept full
            responsibility for my action alone."
21

22  (Id. at pp. 56-57.)  Conversely, these statements by petitioner

23  do not constitute "some evidence" that his lack of intent

24  minimizes his culpability as the BPH determined. (Id. at p. 45.)

25      Accordingly, the State's finding is contrary to "clearly

26  established" United States Supreme Court precedence and must

27  be rejected.  (Hill, 472 U.S. at p. 455; Sass v. California Bd.

28  of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006).)

**II**

THE BPH'S RELIANCE SOLELY ON THE FACTS AND RE-CHARACTERIZATION
OF PETITIONER'S COMMITMENT OFFENSE TO DENY PAROLE RESULTED  IN
A VIOLATION OF DUE PROCESS UNDER THE 5TH AND 14TH AMENDMENTS

**A.   The Nature of Petitioner's Offense Does Not Supply**

   **"Some Evidence" Rationally Demonstrating His Release**

   **Would Unreasonably Endanger Public Safety**

The California Supreme Court has clarified California's
"some evidence" test in this respect.  Specifically, the Court
noted that "⌜w]hen the ⌜BPH] bases unsuitability on the
circumstances of the commitment offense, it must cite 'some
evidence' of aggravating factors beyond the minimum elements of
⌜the] offense" (Dannenberg, supra, 34 Cal.4th at p. 1095 fn.
16) and "where no circumstances of the offense reasonably could
be considered more aggravated or violent than the minimum
necessary to sustain a conviction for ⌜the] offense"
(Rosenkrantz, supra, 29 Cal.4th at p. 654) -- the inmate has
"an expectation that parole will be granted." (Id.; Allen,
supra, 482 U.S. at p. 381.)

Here, the BPH again determined that Petitioner would pose a
current unreasonable risk to society if released from prison.[3/]

_____

   3.  Petitioner's initial parole consideration hearing was
conducted on May 13, 2002, at which, he was found unsuitable
for parole and denied one year.  The panel relied upon the same
factors at issue in this petition. (Ex. B at p. 57.)  The
panel further found that petitioner had an escalating pattern
of criminal conduct. (Id. at p. 58.)  At an August 3, 2004,
subsequent parole consideration hearing, the BPH panel found
petitioner unsuitable for parole for a period of one year.  In
support of its findings the panel noted that the offense was
"carried out in an especially cruel and callous manner." (Ex.
C at p. 58.)  Additionally, the panel relied upon the same
factors at issue here. (Ibid.)

1  (Exhibit A.)  In making this determination, the BPH found that

2  (1) "the offense was carried out in an especially cruel and

3  callous manner" (id. at p. 60, lns 23-25), (2) "the offense was

4  carried out in a dispassionate and calculated manner" (id at p.

5  61, lns 1-3), and (3) "the offense was carried out in a manner

6  demonstrating exceptionally callous disregard for human

7  suffering." (Id. at p. 61, lns 5-8.)

8      The BPH determined that petitioner's crime was more

9  egregious than minimally necessary to convict him of second

10 degree murder because petitioner attacked and beat the victim,

11 who was ultimately shot in the back and died at the scene, it

12 was a confrontation between gang members preplanned by lying in

13 wait for the victim as he walked home and it occurred near a

14 school and there was a clear opportunity to cease but

15 petitioner continued. (Ex. A at pp. 60-61.)

16     Some of these characteristics are inaccurate and lack any

17 support in the record.  For example, there is no dispute that

18         "On the day of the incident, some of ⌜petitioner's⌝
           friends went to the McDonalds near Fullerton High
19         School in Northern Orange County.  ⌜Petitioner⌝ was
           not present at the time.  One of ⌜petitioner's⌝
20         friends got in a staring match with the decedent
           and some of his friends who were members of 'Toker
21         Town' a long established Hispanic gang in fullerton.
           Essentially the Toker Town group told ⌜petitioner's⌝
22         friends that they were not welcome in Fullerton
           where some of them already lived and they should
23         get out of town.  Angered by this ⌜warning⌝
           ⌜petitioner's⌝ friends decided to confront the
24         decedent's group after school got out that day.
           ⌜Petitioner⌝ was called to help out in case they
25         should be out numbered.  The group waited after
           school and confronted the decedent and one of his
26         friends about two blocks south of Fullerton High
           School, not on school grounds.  From all appearances
27         this was intended to be a fist fight.  ⌜Petitioner⌝
           and the friends that had been in the stare down
28

approached the decedent and another young man who
were walking on the sidewalk. A fist fight is how
it started, however the decedent's friend fled
just after the punching began and that left
⌐petitioner] and his friend fighting the decedent
who was significantly larger than either of them.
...While the fight was going on a third member of
the group ⌐petitioner] was part of ran forward to
the scene⌐,] ...reached around ⌐petitioner] and
shot the decedent killing him and narrowly missing
⌐petitioner]. ⌐Petitioner] angrily confronted the
shooter demanding to know why he brought out the
gun and asserting that he, ⌐petitioner], didn't
know the gun was going to be used."

(Id. at p. 35; Ex. D.)

## 1) The BPH's Dispassionate and Calculated Finding

## Lacks Evidentiary Support in the Record

As the court's have concluded "'Dispassionate' means free

from emotion or prejudice; calm and impartial., ...No

rational person could describe ⌐this offense] as calm and

without emotions." (Rosenkrantz v. Marshall, supra, 444

F.Supp.2d 1096 footnote 4, quoting In re Rosenkrantz, (2000)

80 Cal.App.4th 409, 419-420.) To the contrary, this offense

is replete with emotion. First, petitioner's friends were

angered by the decedent's order to "get out of town." (Ex. D at

p. 2.) Next, fearful of the number of Toker Town group

members petitioner's friends would have to face, petitioner was

asked to come along, which he did. And finally, after the

shooting, petitioner angrily demanded to know why his

co-defendant brought out the gun. (Ibid.) Accordingly, the

BPH's finding that this case was dispassionate is contrary to

the weight of the evidence indicating otherwise. (Hill, supra,

472 U.S. at p. 455; Sass, supra, 461 F.3d at pp. 1128-1129.)

-15-

1    Likewise, the statement that the crime was "calculated"

2  (Ex. A at 61) contradicts all the evidence in the record.   In

3  finding petitioner guilty of second degree murder, the jury was

4  instructed with the natural and probable consequences doctrine

5  which permitted the jury to find that petitioner was guilty of

6  second degree murder if he aided and abetted the fist fight and

7  that the shooting was a natural and probable consequences of

8  aiding and abetting the fight.  (Ex. D.)   Thus, there was no

9  requirement that petitioner form the specific intent to kill or

10  be aware that anyone else formed the specific intent to kill.[4]/

11    The BPH viewed the offense as "dispassionate and

12

13    4.   Under the natural and probable doctrine, "...the aider
and abettor in a proper case is not only guilty of the
14  particular crime that to his knowledge his confederates are
contemplating committing, but he is also liable for the natural
15  and reasonable consequences of any act that he knowingly aided
or encouraged."  (People v. Croy, (1985) 41 Cal.3d 1, 12,
16  fn. 5; People v. Prettyman, (1996) 14 Cal.4th 248.)   Thus, the
pivotal question is, "whether the collateral criminal act was
17  the ordinary and probable effect of the common design or was a
fresh and independent product of the mind of one of the
18  participants, outside of, or foreign to, the common design."
(People v. Nguyen, (1993) 21 Cal.App.4th 518, 531 citing People
19  v. Kaufman, (1907) 152 Cal. 331, 337; See also, People
v. Durham (1969) 70 Cal.2d 171, 182-183.)   Each juror must be
20  convinced, beyond a reasonable doubt, that the defendant aided
and abetted the commission of a criminal act, and that the
21  offense actually committed was a natural and probable
consequence of that act.  (People v. Prettyman, supra, 14
22  Cal.4th at 268.)   In order to determine whether a particular
criminal act was a natural and probable consequence of another
23  criminal act aided and abetted, a jury must determine whether,
"under all of the circumstances presented, a reasonable person
24  in the defendant's position would have or should have known
that the charged offense was a reasonably foreseeable
25  consequence of the act aided and abetted by the defendant."
(People v. Nguyen, supra, 21 Cal.App.4th at 531 citing, People
26  v. Woods (1992) 8 Cal.App.4th 1570, 1587; See People v.
Mendoza (1998) 18 Cal.4th 1114, 1133; People v. Price (1991)
27  1 Cal.4th 324, 443.)

28

                              -16-

1 │ calculated'" without considering that petitioner "was not the
2 │ shooter and no evidence existed to show that he suggested,
3 │ encouraged or aided or abetted the shooting in any way." (Ex. A
4 │ at p. 35m lns 16-19.)  Recent case law provides that "⌈w⌉hile an
5 │ accomplice is treated the same as the perpetrator of a crime for
6 │ the purposes of determining guilt and imposing sentence
7 │ (Citation), continuing to do so in making a parole suitability
8 │ determination violates the prisoner's due process right to 'an
9 │ individualized consideration of all relevant factors.'"  (In re
10 │ Montgomery, (2007) DJDAR 16717, 16122; see also In re Tripp, 150
11 │ Cal.App.4th 306, 319, quoting Rosenkrantz, supra, 29 Cal.4th at
12 │ p. 655.)  Consequently, the BPH's actions make a mockery of
13 │ California law governing aiding and abetting and the natural
14 │ probable consequences theory of second degree murder.

15 │      **2)**  **The BPH's Exceptionally Callous Finding to Deny**
16 │        **Parole In This Case Was Erroneously Applied**

17 │     Similarly, the BPH's denial based upon a finding that --
18 │ the "offense was carried out in a manner which demonstrates an
19 │ exceptionally disregard for human suffering, ...in that it
20 │ occurred near a school and there was a clear opportunity for
21 │ ⌈petitioner⌉ to cease but ⌈he⌉ continued," (Ex. A at p. 61) --
22 │ does not fit within the regulatory provisions which
23 │ "contemplates that the victim was made to suffer in some
24 │ exceptional way." (Rosenkrantz v. Marshall, supra, 444
25 │ F.Supp.2d at pp. 1083-1084, quoting In re Scott, 119
26 │ Cal.App.4th 871, 892 (2004) (holding that the offense in
27 │ question must have been committed in a more aggravated or

28 │

-17-

violent manner "than the simple cruelty and callousness
necessary to find that a defendant killed with malice.")

In Scott, the court admonished that "to demonstrate 'an
exceptionally callous disregard for human suffering'
(citation), the offense in question must have been committed in
a more aggravated or violent manner than ordinarily shown in
the commission of second degree murder." (Id. at p. 891.) For
an example, the court pointed to the circumstances of In re Van
Houten (2004) 116 al.App.4th 339 to illustrate the sort of
gratuitous cruelty this finding required, explaining that "the
prisoner in that case was involved in multiple stabbings of a
woman with a knife and bayonet. While she was lying down, the
victim was made aware her husband was suffering a similar
fate." (Id.) The court then concluded "[t]hese acts of
cruelty far exceeded the minimum necessary to stab a victim to
death." (Ibid.) Here, the BPH fails to establish a nexus
between its finding and any acts of cruelty beyond the minimum
necessary to the victims death that petitioner was required
to commit. (Dannenberg, supra, 34 Cal.4th at p. 1095 fn. 16.)

Accordingly, since the relevant evidence shows no more
callous disregard for human suffering than is shown by most
second degree murder offenses, the BPH's characterization of
petitioner's actions as more cruel, dispassionate, calculated,
or committed in a manner more callous than most other second
degree murders in which the courts have found to lack
"some evidence" supporting a denial of parole, is unreasonably
sustainable. (See In re Smith 109 Cal.App.4th 489 (2003);

-18-

1  Scott, supra, 133 Cal.App.4th 573; In re Lee, 143 Cal.App.4th

2  1400 (2006); In re Weider, 145 Cal.App.4th 570 (2006); In re

3  Elkins, 144 Cal.App.4th 475 (2006).)

4      B.   **The Arbitrariness of the BPH's Determination**

5      "Establishing that the commitment offense involved some

6  elements more than minimally necessary to sustain a conviction

7  is a step on the path of evaluating a prisoner's current

8  dangerousness, but it is not the final step under the

9  regulations.  Due process affords an inmate 'an individualized

10 consideration of all relevant factors.'"  (Allen supra, 482

11 U.S. at p. 375; Irons, supra, 479 F.3d at p. 662; Tripp, supra,

12 150 Cal.App.4th at p. 319; Rosenkrantz, supra, 29 Cal.4th at

13 p. 655.)

14     Under BPH regulations, the prisoner's "motivation" for the

15 offense tends to show suitability when it was "the result of

16 significant stress in his life, especially if the stress has

17 built over a long period of time" (15 CCR § 2402, subd. (d)(4))

18 In this particular case, petitioner had suffered from a severe

19 state of depression at the of 16, resulting in attempted

20 suicide and the use of drugs, which psychologist concluded "may

21 have contributed to his state of mind and poor judgment during

22 the time of the crime." (Ex(s) E at pp. 3 & 5; I at p. 3.)  The

23 Life Prisoner Evaluation Report prepared in April 2002 stated

24 that the crime was "episodic" in nature and was not indicative

25 of petitioner's nature.  (Ex(s) G and H.)

26     The BPH's decision fails to mention or consider inter alia,

27 the significant stress in petitioner's life.  The BPH was

28                              -19-

1  obligated to consider the significant stress petitioner was
2  experiencing at and prior to the time he committed his
3  offense.  (Rosenkrantz, supra, 29 Cal.4th at p. 679;
4  In re Scott, 119 Cal.App.4th 888, 889; In re Scott II, 133
5  Cal.App.4th 573, 596.)  The BPH's failure to consider whether
6  petitioner committed his offense "'as a result of significant
7  stress in his life' is arbitrary and capricious in the sense
8  that it failed to apply the controlling legal principles to the
9  facts before ⌐it]."  (Scott II, supra, at p. 596; 15 § 2402,
10 subd. (d)(4).)

11     Additionally, petitioner was only 19 years of age at the
12 time of the commitment offense, and is now an adult.  The BPH
13 was also required to consider this factor under the regulations
14 as a circumstance supportive of petitioner's application.  Yet,
15 it failed to do so.  (15 CCR § 2402, subd. (d)(6); see also
16 Thompson v. Oklahoma, 487 U.S. 815, 835 (1988) ⌐noting
17 "Inexperience, less intelligence and less education makes a
18 teenage less able to evaluate the consequences of his or her
19 conduct while at the same time he she is more apt to be
20 motivated by mere emotion or peer pressure than as an adult"].)

21     Moreover, while the BPH "commended" petitioner for the way
22 he has "programmed" in custody, its decision failed to reflect
23 consideration of petitioner's institutional behavior as a
24 circumstance tending to show his suitability for parole.  (Ex.
25 A at p. 61.)  This factor is a factor the BPH is required to
26 consider under the regulations.  (§ 2402, subd. (d)(9).)

27
28

## CONCLUSION

Because the circumstances of this crime do not amount to "some evidence" supporting the conclusion that petitioner poses a "current" unreasonable risk of danger if released from prison and the BPH offered no reliable evidence supporting a finding of unsuitability, the BPH and state court determination(s) were unreasonable in light of the evidence presented at the parole hearing. Thus, the state court proceedings amounted to an unreasonable application of clearly established Supreme Court precedent. (Rosenkrantz v. Marshall, 444 F.Supp.2d 1063 (2006).) Petitioner therefore, respectfully request this Court to grant the petition for writ of habeas corpus and order Respondent to release him forthwith unless legitimate post-conviction evidence can be found to suggest that his release would pose a current danger to public safety.

Dated: 1-22-2008                    Respectfully submitted,


Sieu Phong Ngo
Petitioner, Pro Se

## DECLARATION OF SERVICE BY MAIL

Case Name: In re SIEU PHONG NGO:

I, the undersigned, hereby certify that I am a resident of the state of California, County of Monterey. I am over the age of 18 years and am a party to the within action. My business/residence address is P.O. Box 689, Soledad, California, 93960-0689.

On January 22, 2008, I caused to be served on the parties a true and correct copy of the attached **PETITION FOR WRIT OF HABEAS CORPUS and EXHIBITS A thru L** as follow:

### U.S.MAIL

Office of the Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004

I declare under penalty of perjury that the following is true and correct.

_____
Declarant