# EXHIBIT 2



FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER
AUG 1 2006
ALAN SLATER, Clerk of the Court
BY: _____, DEPUTY

SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE COUNTY OF ORANGE

In re

SIEU NGO,

    Petitioner,

ON HABEAS CORPUS.

CASE NO. M-10984

ORDER

TO THE PETITIONER AND THE OFFICE OF THE ATTORNEY GENERAL OF THE STATE OF CALIFORNIA, HAVING RECEIVED THE PETITION FOR WRIT OF HABEAS CORPUS, THE COURT FINDS AND ORDERS AS FOLLOWS:

I

    In 1993, Petitioner was a gang member who, along with four other members of his gang, attacked a 15-year-old rival gang member. The victim was beaten, kicked and finally shot and killed. Petitioner was not the shooter. In 1994, Petitioner entered a plea to second degree murder and was sentenced to 16 years to life. He became eligible for parole in 2003. He had a subsequent parole hearing in February 2006.

    At the February 2006 hearing, the Board of Parole Hearings (hereafter individually and collectively referred to as "the BPH") found Petitioner would pose an unreasonable risk of danger to society or a threat to public safety at this time if he were released. In announcing its decision, the BPH stated the crime was carried out in an especially cruel and callous manner in that the 15-year-old victim was attacked and beaten and ultimately shot in the back and died at the scene. The offense displayed a disregard for public safety in that it occurred near a school. During the hearing, Petitioner stated that he thought he was going to a fist fight; he saw the gun under a car seat, but he did not intend that the victim would be killed and did not realize anyone else had that intent. The BPH concluded that Petitioner's statement minimized the gravity of the

crime as well as his involvement, and demonstrated a lack of insight. Based on that, the BPH stated it was "hard . . . to get a gauge on what risk [Petitioner] would pose to public safety when [it cannot] feel comfortable about the level of insight [Petitioner] displayed."

The BPH acknowledged that Petitioner was a model prisoner. He had no record of misconduct in prison and only two minor rule violations, one being for window coverings. Petitioner had participated in multiple self-help programs, had made substantial progress toward a college degree, had outstanding parole plans, and a psychological report supported his release. The psychologist had concluded Petitioner's violence potential was less than the average citizen in the community. Nevertheless, the BPH determined it would not grant parole. Based on Petitioner's statement that he thought he was going to a fist fight, the BPH believed Petitioner was minimizing the gravity of the crime as well as his involvement, and demonstrating a lack of insight. Based on Petitioner's lack of insight, the BPH concluded it was "hard . . . to get a gauge on what risk" Petitioner would pose to public safety. Parole was denied for two years.

II

Petitioner argues there was no evidence to support the BPH decision that he posed an unreasonable risk of danger to society if released from prison. Petitioner acknowledges that the requirements of due process are satisfied if "some evidence" supports the decision. (*In re Rosenkrantz* (2002) 29 Cal.4th 616, 626.) He contends, however, that the factors set forth in California Code of Regulations, title 15, section 2402 all indicate his suitability for parole. He points out that the psychological evaluation was extremely supportive of release and the evaluator concluded Petitioner's violence potential was less than the average citizen in the community. Further, the crime occurred when he was 19. He is now 33. He has a flawless prison record, has participated in numerous self-help programs and has upgraded educationally. He also argues, citing Penal Code section 3041, subdivision (b), that a life prisoner must be paroled when his release would not pose a danger to the public.

Petitioner further contends that denial of parole based solely on the unchanging facts of his commitment offense violated the constitutional prohibition against cruel and unusual punishment. Even assuming the BPH characterization of the offense was accurate, he argues, the crime alone cannot support a finding he currently poses a risk to society.

III

The petition is denied on the following grounds:

2

The California Supreme Court in *In re Dannenberg* (2005) 34 Cal.4th 1061 held that the BPH "may protect public safety" by "considering the dangerous implications" of the commitment offense. (*Id.* at p. 1071.) This applies to crimes such as Petitioner's. (Pen. Code, § 3041; *In re Dannenberg, supra*, at pp. 1082-1084.) Thus, while the BPH must point to factors "beyond the minimum elements of the crime . . . it need engage in no further comparative analysis before concluding that the particular facts of the offense make it unsafe, at that time, to fix a date for the prisoner's release." (*In re Dannenberg, supra*, at p. 1071.) Here, the BPH pointed over and over to the gang-related nature of the offense. Petitioner was not the shooter; nevertheless the death of the young victim resulted from gang rivalry, a factor beyond the minimum elements of second degree murder. (Compare *In re Shaputis* (2005) 135 Cal.App.4th 217 [no evidence of conduct beyond the minimum required for conviction of second degree murder where wife-victim died from a single gunshot wound fired at close range after marital argument and the petitioner immediately called police and turned himself in].) The BPH was therefore not required to consider the factors set forth in California Code of Regulations, title 15, section 2402. (*In re Dannenberg, supra*, at p. 1071.)

Moreover, the BPH "shall set a release date *unless* it determines that the gravity of the current convicted offense . . . is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting." (Pen. Code, § 3041, subd. (b), emphasis added.) The BPH focused on Petitioner's statement he thought he was going to a fist fight and concluded he was minimizing the gravity of the crime and his involvement and demonstrating a lack of insight. It determined public safety considerations required more incarceration and denied parole on that basis. The denial was therefore authorized by Penal Code section 3041, subdivision (b).) (*In re Dannenberg, supra*, at p. 1071.) The petition is denied on that basis. (*Ibid.*)

IV

The petition for a writ of habeas corpus is DENIED.

DATED: 8-31-06

JUDGE OF THE SUPERIOR COURT

3

246

SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF ORANGE

# MINUTE ORDER

Case Number   M-10984 X A

**People Vs Ngo, Sieu**

Report Request Criteria
1. Docket Date Range    : Date filter
2. Sequnce Number Range : Sequence filter
3. Docket Category      : Category filter

| Docket Dt | Seq | Text |
|---|---|---|
| 8/31/2006 | 1 | Hearing held on 08/31/2006 at 09:00 AM in Department C5 for Chambers Work. |
| | 2 | Officiating Judge: Kazuharu Makino, Judge |
| | 3 | Clerk: L. Torres |
| | 4 | No Court Reporter present at proceedings. |
| | 5 | No appearances. |
| | 6 | Order denying Writ of Habeas Corpus filed. |
| | 7 | Petition for Writ of Habeas Corpus is denied for the reasons stated in the order denying writ filed 08/18/2006. |
| | 8 | As ordered, the clerk this date has mailed a copy of this minute order to the Petitioner at<br>MARILEE MARSHALL & ASSOCIATES<br>523 WEST SIXTH STREET<br>SUITE 1109<br>LOS ANGELES, CA. 90014 |
| | 9 | The clerk this date has forwarded a copy of this minute order to Orange County District Attorney's Office. |

243